UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

No. 16-1024(L)
_____

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
and SIERRA CLUB,

*Plaintiffs-Appellees*,

v.

FOLA COAL COMPANY, LLC,

*Defendant-Appellant*,
_____

Appeal from the United States District Court for the Southern
District of West Virginia at Huntington (2:13-cv-5006)
_____

**SUPPLEMENTAL RESPONSE OF PLAINTIFFS-APPELLEES OHIO VALLEY ENVIRONMENTAL COALITION, et al. TO AMICI CURIAE BRIEFS OF U.S. ENVIRONMENTAL PROTECTION AGENCY AND WEST VIRGINIA DEPARTMENT OF ENVIRONMENTAL PROTECTION**
_____

| | |
|---|---|
| Joseph M. Lovett | James M. Hecker |
| J. Michael Becher | Public Justice |
| Appalachian Mountain Advocates | 1620 L Street, N.W.  Suite 630 |
| P.O. Box 507 | Washington, DC 20036 |
| Lewisburg, WV 24901 | (202) 797-8600 |
| (304) 645-9006 | |

*Counsel for Plaintiffs-Appellees*
*Ohio Valley Environmental Coalition, et al*.

## Table of Contents

Introduction ...................................................................................................................1

Argument    ....................................................................................................................2

I.      Rule 5.1.f Is an Enforceable Requirement of Fola's Permit ...........................2

II.     The Court Need Not Reach WVDEP's Permit Shield Argument ..................6

III.    The District Court Applied the Proper Standard for Determining Compliance With Rule 5.1.f ..................................................................................7

Conclusion ..................................................................................................................10

# Table of Authorities

**Cases**

*Nat. Res. Def. Council v. Metro. Water Reclamation Dist. of Greater Chicago*,
   2016 WL 1298124 (N.D. Ill. Mar. 31, 2016) .......................................................3

*Natural Res. Def. Council v. County of Los Angeles*,
   725 F.3d 1194 (9th Cir. 2013) ...........................................................................3

*New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*,
   734 F. Supp. 2d 1326 (N.D. Ga. 2010)..............................................................3

*Northwest Envtl. Advocates v. City of Portland*,
   56 F.3d 979 (9th Cir. 1995) ...............................................................................2

*Piney Run Pres. Ass'n v. Cnty. Comm'rs*,
   268 F.3d 255 (4th Cir. 20110) ................................................................2, 6, 7, 9

*Snyder v. Phelps*,
   580 F.3d 206 (4th Cir. 2009) .............................................................................5

*Three Lower Counties Cmty. Health Servs., Inc. v. Maryland*,
   498 F.3d 294 (4th Cir. 2007) .............................................................................8

*U.S. v. Consol Energy, Inc.*,
   Civil No. 1:11-cv-28 (N.D. W.Va.) ..................................................................4, 5

*U.S. v. Smithfield Foods*,
   191 F.3d 516 (4th Cir. 1999) ...........................................................................10

*United States v. Buculei*,
   262 F.3d 322 (4th Cir. 2001) .............................................................................5

*US Airways v. McCutcheon*,
   133 S.Ct. 1537 (2013).......................................................................................9

**Statutes**

33 U.S.C. § 1313(d) ................................................................................................8

33 U.S.C. § 1313(d)(1)(A) .......................................................................................8

33 U.S.C. § 1362(11) ..............................................................................................3

**Rules**

40 C.F.R. § 122.2 ...................................................................................................3

40 C.F.R. § 122.44 .................................................................................................5

40 C.F.R. § 122.44(i) ..............................................................................................5

40 C.F.R. § 130.7(b)(5)...........................................................................................8

40 C.F.R. § 130.7(d)(1)...........................................................................................8

47 C.S.R. § 30-5.1.f .........................................................................................*passim*

**Legislative Materials:**

Senate Bill 562 (W.Va.).........................................................................................7

## Introduction

The U.S. Environmental Protection Agency (EPA) and the West Virginia Department of Environmental Protection (WVDEP) have each filed amici curiae briefs addressing the issues identified in this Court's September 6, 2016 order. In its brief, EPA states that (1) the narrative condition in Appellant Fola Coal Company, LLC's (Fola) WV/NPDES permit requires compliance with water quality standards, (2) that condition is enforceable by Appellees Ohio Valley Environmental Coalition, et al. (OVEC) in this Clean Water Act citizen suit, (3) the district court reasonably decided that the West Virginia Stream Condition Index (WVSCI) is the proper method for determining whether Stillhouse Branch is biologically impaired and violates West Virginia's narrative water quality standards, (4) the district court's choice of conductivity, generally, as a metric for evaluating compliance was reasonable, and (5) the multifold increase in conductivity levels in Fola's discharges supports a reasonable inference that those discharges cause or contribute to the observed biological impairment in Stillhouse Branch.

OVEC agrees with EPA. Its statements strongly support the district court's permit interpretation, its method for determining permit compliance, and its finding that Fola has violated its permit.

In its brief, WVDEP disagrees with EPA and OVEC. It argues that (1) Fola's narrative permit condition does not require compliance with water quality

standards, (2) Fola is shielded from a Clean Water Act citizen suit because it is in compliance with the numerical effluent limits in its permit, and (3) WVSCI and conductivity cannot be used as standards for determining compliance with West Virginia's narrative water quality standards.  OVEC submits that WVDEP's arguments are incorrect and should be rejected.

## Argument

### I. Rule 5.1.f Is an Enforceable Requirement of Fola's Permit

EPA agrees with OVEC that the plain language of Rule 5.1.f. creates an enforceable obligation to comply with water quality standards.  EPA Br. 5.  "[I]f the language is plain and capable of legal construction, the language alone must determine the permit's meaning." *Piney Run Pres. Ass'n v. Cnty. Comm'rs*, 268 F.3d 255, 270 (4th Cir. 2001).   WVDEP disagrees with EPA's interpretation, but its textual and other arguments are flawed.

Textually, WVDEP argues that Rule 5.1.f is unenforceable because it is phrased in the passive voice and refers to discharges rather than the permittee. WVDEP Br. 4.  That rule is not substantially different, however, from narrative conditions in the Clean Water Act permits that federal courts have enforced.  Those permit conditions were similarly phrased in the passive voice and did not refer to the permittee.[1]

---

[1] *Northwest Envtl. Advocates v. City of Portland*, 56 F.3d 979, 985 (9th Cir.

WVDEP next argues that Rule 5.1.f distinguishes between "discharges covered by a WV/NPDES permit" and "applicable water quality standards," and that the former phrase refers only to the specific *numeric* effluent limits in the permit section A. WVDEP Br. 4. That interpretation is nonsensical. "Discharge" refers to "the discharge of a pollutant," 40 C.F.R. § 122.2, while "effluent limitation" refers to the "restriction . . . on constituents which are discharged." 33 U.S.C. § 1362(11). Thus, "discharges covered by a WV/NPDES permit" plainly refers to discharges of pollutants, not the effluent limits that restrict the constituents in those discharges.[2]

Based on this misreading of the text, WVDEP argues that Rule 5.1.f is merely "an instruction to WVDEP to develop specific effluent limits in permits in light of the WQS." *Id.* The text does not support that conclusion. Rule 5.1 gives instructions to permittees on how to comply with their permits, not instructions to

---

1995) ("no wastes shall be discharged and no activities shall be conducted which will violate Water Quality Standards"); *Natural Res. Def. Council v. County of Los Angeles*, 725 F.3d 1194, 1199 (9th Cir. 2013) (permit prohibited "discharges from the [LA] MS4 that cause or contribute to the violation of the Water Quality Standards"); *Nat. Res. Def. Council v. Metro. Water Reclamation Dist. of Greater Chicago*, 2016 WL 1298124, at *2 (N.D. Ill. Mar. 31, 2016) ("The effluent, alone or in combination with other sources, shall not cause a violation of any applicable water quality standards"); *New Manchester Resort & Golf, LLC v. Douglasville Dev., LLC*, 734 F. Supp. 2d 1326, 1336–37 (N.D. Ga. 2010) ("No discharges authorized by this permit shall cause violations of Georgia's in-stream water quality standards").

[2] Moreover, as OVEC has explained, the term "effluent limit" includes non-numeric limits. OVEC Br. at 26 n. 5.

3

WVDEP on how to write permits. The title of the rule is "Duty to Comply." The rule instructs Fola that its discharges must comply with water quality standards.

In a similar Clean Water Act enforcement action cited by EPA, that is exactly how WVDEP interpreted Rule 5.1.f. In 2011, EPA and WVDEP sued Consol Energy, Inc., Fola's parent, for violating its Clean Water Act permits and discharging excessive pollutants into Dunkard Creek. EPA Br. 6-7. In its first claim in its complaint in intervention, WVDEP alleged that Consol violated its numerical permit limitations for chloride. *U.S. v. Consol Energy, Inc.,* Civil No. 1:11-cv-28 (N.D. W.Va.), Compl., Doc. 6-1, ¶¶ 43-50. In its second claim, WVDEP alleged that Consol violated the narrative water quality standards for biological integrity "incorporate[d] by reference" into its permits through Rule 5.1.f. *Id.*, ¶¶ 31, 51-64. WVDEP alleged that Consol violated that rule because its mines discharged high levels of chloride and total dissolved solids (a parameter that was not subject to numerical effluent limitations in Consol's permits) into Dunkard Creek, and those discharges "caused significant adverse impact to the chemical, physical, hydrologic, and/or biological components of the aquatic ecosystem" in that Creek, including a fish kill and damage to downstream aquatic macro-invertebrate communities. *Id.* Thus, WVDEP viewed Rule 5.1.f the same way that EPA and OVEC view it—as an enforceable permit condition that is in addition to, and separate from, Consol's numerical permit limits and requires

4

compliance with water quality standards.[3]

Despite its past practice of enforcing Rule 5.1.f, WVDEP now argues that the lack of monitoring requirements for WVSCI and conductivity in Fola's permit shows that WVDEP did not intend to make Rule 5.1.f an enforceable requirement. WVDEP Br. 5-6.[4] WVDEP relies on 40 C.F.R. § 122.44(i), but § 122.44 only requires monitoring "when applicable," not for every permit condition. The requirements listed in subparagraph (i) apply only to numerical limits on mass and volume, not narrative conditions. WVDEP's past practice shows that it knows that § 122.44 does not control narrative conditions. For example, when WVDEP sued Consol in 2011, it used its own TDS sampling data and biological assessment data to enforce the narrative standards, just as OVEC did in the instant action. WVDEP Compl., ¶¶ 59, 61. WVDEP's own action therefore shows that § 122.44(i) does not apply to Rule 5.1.f and that rule is enforceable using third-party sampling data.

---

[3] WVDEP eventually settled its enforcement action, recovering penalties and securing injunctive relief. *U.S. v. Consol*, Doc. 22.

[4] To the extent that WVDEP or Fola argues that Fola's permit condition is invalid because it is not accompanied by monitoring requirements for conductivity or WVSCI, that argument should not be even considered. First, this Court has "consistently been wary, even prohibitive, of addressing an issue raised solely by an amicus." *Snyder v. Phelps*, 580 F.3d 206, 216 (4th Cir. 2009). Fola is the only party that could raise this argument, and Fola waived it by not raising it in the district court or in its brief on appeal. *See U.S. v. Buculei*, 262 F.3d 322, 333 n. 11 (4th Cir. 2001) ("'An issue waived by appellant cannot be raised by amicus curiae.'"). Second, this new argument would be an improper collateral attack on the validity of Fola's permit. A permittee cannot challenge alleged flaws in its permit in an enforcement proceeding. *See* OVEC Br. 18-19.

Its about-face in its amicus brief is hypocritical and disingenuous.

Moreover, Fola's monitoring obligations are defined by both their NPDES and mining permits. Rule 5.1.f only applies to coal mining companies, and those companies must obtain mining permits that require baseline and ongoing monitoring for conductivity. 38 C.S.R. §§ 2-3.22.c.2, 2-3.22.g. OVEC used Fola's own monitoring data for conductivity from its mining permit to enforce the company's WV/NPDES permit. JA 710, 713-14.

WVDEP next claims that OVEC's and EPA's interpretation of Rule 5.1.f would "lead to great confusion" because it would allow enforcement of numerical permit limits at the point of discharge and different numerical water quality standards in the receiving stream. WVDEP Br. 6. This policy argument cannot override the plain permit language. In any event, in the Consol Dunkard Creek case, WVDEP did not view this as a problem. It enforced the numerical end-of-pipe chloride limits, the numerical in-stream acute water quality standard for chloride, and the narrative water quality standard for biological integrity. WVDEP Compl., ¶¶ 45, 56-57. All of those permit limits apply and are enforceable.

## II. The Court Need Not Reach WVDEP's Permit Shield Argument

OVEC agrees with EPA that the applicability of the permit shield is predicated on a showing that "the permit holder complies with the express terms of the permit." EPA Br. 5, n. 2, *citing Piney Run*, 268 F.3d at 259; *see* OVEC Br. 20-

23. Therefore, if Rule 5.1.f is enforceable and Fola violated it, Fola cannot invoke the shield. Alternatively, if Rule 5.1.f is not enforceable, there is no violation to "shield" Fola from liability. In either event, the shield is inapplicable.

WVDEP relies on its own informal letters to try to expand the scope of the permit shield beyond the limits that this Court defined in *Piney Run.* WVDEP argues that Fola is shielded so long as it complies with its numerical permit limits, and that it can discharge any pollutant not limited in the permit if that pollutant was disclosed during the permit process. WVDEP Br. 7-9. As we have explained, this argument is foreclosed by this Court's decision in *Piney Run*, which held that full disclosure alone, without full permit compliance, is not enough to invoke the permit shield. *See* OVEC Br. 21-23.

### III. The District Court Applied the Proper Standard for Determining Compliance With Rule 5.1.f

EPA agrees with OVEC that the district court properly used the West Virginia Stream Condition Index (WVSCI) to determine compliance with West Virginia's narrative water quality standards for biological integrity. EPA Br. 7-8. EPA uses WVSCI to identify impaired waters that violate narrative water quality standards. *Id*.

WVDEP disagrees. It contends that it does not use a WVSCI score or conductivity value to measure compliance with narrative standards, and that the district court erred in using those criteria to determine Fola's compliance with Rule

7

5.1.f. WVDEP Br. 9-10.

WVDEP cites Senate Bill 562 to support its decision to refuse to use its own WVSCI method to determine stream impairments. WVDEP Br. 9-10. EPA concluded, however, that "SB 562 is a state law that does not override federal requirements," including the requirements to "assemble *and evaluate* all existing and readily available data (40 C.F.R. § 130.7(b)(5))); identify *all* waterbodies that fail to meet currently applicable water quality standards (33 U.S.C. § 1313(d)(1)(A)); and submit a biennial list of such waters to EPA for approval (40 C.F.R. § 130.7(d)(1))." JA 645 (emphasis in original). Based on that analysis, EPA rejected part of WVDEP's § 303(d) list and made its own stream impairment decisions using WVSCI. JA 645-46.

EPA's interpretation trumps WVDEP's, because EPA has the final authority to determine which streams are impaired under § 303(d) of the Clean Water Act. 33 U.S.C. § 1313(d); *see* OVEC Br. 41. This Court "has repeatedly stated that '[a] state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes under *Chevron*.'" *Three Lower Counties Cmty. Health Servs., Inc. v. Maryland,* 498 F.3d 294, 302 n. 2 (4th Cir. 2007) (internal citation omitted).

The district court properly used the EPA-approved WVSCI method to determine that Stillhouse Branch is biologically impaired. OVEC Br. 38-41. A

8

NPDES permit is interpreted like a contract. *Piney Run,* 268 F.3d at 269. When a contract has gaps, "a court properly takes account of background legal rules—the doctrines that typically or traditionally have governed a given situation when no agreement states otherwise." *US Airways v. McCutcheon,* 133 S.Ct. 1537, 1549 (2013). The EPA-approved WVSCI method is such a background rule and it applies here.[5] Since 2002, WVDEP and EPA each understood that biological impairment is shown by a failing WVSCI score. JA 637, 643, 649, 661.

WVDEP also demands that this Court defer to WVDEP's conclusion that "conductivity is poorly correlated with WVSCI scores." WVDEP Br. 10. WVDEP cites no peer-reviewed scientific studies to support that conclusion and instead relies on its own guidance document. *Id.*; JA 1019-20. That document itself refutes WVDEP's argument. As the district court found, it "recognizes ionic strength as a 'definite stressor' in alkaline drainage when conductivity surpasses 1533 µS/cm." JA 593.[6] This shows that "WVDEP accepts that increased conductivity causes or materially contributes to decreases in aquatic life." *Id*.

---

[5] *McCutcheon* also refutes WVDEP's argument that if a permit has a gap in monitoring requirements, it must be invalidated. *McCutcheon* teaches that "contracts ... are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' [contrary] intent." 133 S.Ct. at 1549, *quoting Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000). WVDEP's common-sense understanding is that it can use its own sampling data to determine non-compliance when the permit does not require monitoring.

[6] The conductivity in Fola's discharges is over 3000 uS/cm. JA 710-14.

9

After reviewing expert testimony, peer-reviewed scientific studies, and "multiple lines of evidence," the district court concluded that "the weight of evidence shows that it is more likely than not that high conductivity in streams impacted by alkaline mine drainage causes or materially contributes to chemical and biological impairment." JA 593-603. WVDEP cannot show that the district court's factual finding that conductivity causes stream impairment is clearly erroneous.

OVEC did not file this case to obtain judicial review of WVDEP's policies on WVSCI or conductivity. OVEC filed this citizen suit to enforce a permit condition that requires Fola to comply with water quality standards. WVDEP's refusal to enforce that condition, and its unscientific views about conductivity and stream impairment, are not binding on EPA or citizen plaintiffs. EPA and citizens can enforce Fola's permit conditions even if the state does not believe that the permit has been violated. *U.S. v. Smithfield Foods,* 191 F.3d 516, 524-25 (4th Cir. 1999). WVDEP has abdicated its responsibility to enforce compliance with its own narrative biological water quality standards, and OVEC has therefore stepped in to enforce compliance. The district court's decision that Fola violated its permit is amply supported by the evidence presented at trial.

## Conclusion

The district court's decision holding Fola liable for violating its Clean Water Act and SMCRA permits and granting injunctive relief should be affirmed.

10

Respectfully submitted,

Joseph M. Lovett
J. Michael Becher
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

*s/James M. Hecker*
James M. Hecker
Public Justice
1620 L Street, N.W. Suite 630
Washington, DC 20036
(202) 797-8600

*Counsel for Plaintiffs-Appellees*
*Ohio Valley Environmental Coalition, et al*.

11

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing brief was served by CM/ECF on this 20th day of October 2016 on the following:

M. Shane Harvey
Robert G. McLusky
Jennifer Hughes
Jackson Kelly PLLC
500 Lee Street East, Suite 1600
Charleston, West Virginia 25301

*s/James M. Hecker*